RECEIPT #

AMOUNT

SUMMONS ISSUED

LOCAL RULE 4.1

WAIVER FORM

MCF ISSUED

BY DPTY CLK.

DATE  5-4-05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ADAM PRESS, on behalf of himself and all
others similarly situated,

        Plaintiffs,

        v.

PUTNAM INVESTMENT FUNDS,
PUTNAM FUNDS TRUST, PUTNAM
TAX-FREE INCOME TRUST, PUTNAM
ASSET ALLOCATION FUND, PUTNAM
TAX SMART FUNDS TRUST, PUTNAM
INTERNATIONAL EQUITY FUND,
PUTNAM INVESTORS FUND, PUTNAM
MONEY MARKET FUND, PUTNAM
MUNICIPAL INCOME FUND, PUTNAM
NEW OPPORTUNITIES FUND, PUTNAM
OTC & EMERGING GROWTH FUND,
PUTNAM PREFERRED INCOME FUND,
PUTNAM STRATEGIC INCOME FUND,
PUTNAM TAX EXEMPT INCOME FUND,
PUTNAM TAX EXEMPT MONEY
MARKET FUND, PUTNAM U.S.
GOVERNMENT INCOME TRUST,
PUTNAM UTILITIES GROWTH AND
INCOME FUND, PUTNAM VISTA FUND,
PUTNAM VOYAGER FUND, PUTNAM
AMERICAN GOVERNMENT INCOME
FUND, PUTNAM ASIA PACIFIC
GROWTH FUND, PUTNAM BALANCED
RETIREMENT FUND, PUTNAM CAPITAL
APPRECIATION FUND, PUTNAM
CLASSIC EQUITY FUND, PUTNAM
CONVERTIBLE INCOME-GROWTH
TRUST, PUTNAM DISCOVERY GROWTH
FUND, PUTNAM DIVERSIFIED INCOME
TRUST, PUTNAM EQUITY INCOME
FUND, PUTNAM EUROPE EQUITY
FUND, PUTNAM GLOBAL EQUITY
FUND, PUTNAM GLOBAL INCOME
TRUST, PUTNAM GLOBAL NATURAL
RESOURCES FUND, PUTNAM HEALTH
SCIENCES TRUST, PUTNAM HIGH

**05 ᶜᵛ 10923 NG**

MAGISTRATE JUDGE Collings

Civil Action No. _____

YIELD ADVANTAGE FUND, PUTNAM
HIGH YIELD TRUST, PUTNAM INCOME
FUND, PUTNAM INTERMEDIATE U.S.
GOVERNMENT INCOME FUND, THE
GEORGE PUTNAM FUND OF BOSTON,
THE PUTNAM FUND FOR GROWTH AND
INCOME, PUTNAM ARIZONA TAX
EXEMPT INCOME FUND, PUTNAM
CALIFORNIA TAX EXEMPT INCOME
FUND, PUTNAM FLORIDA TAX EXEMPT
INCOME FUND, PUTNAM
MASSACHUSETTS TAX EXEMPT
INCOME FUND II, PUTNAM MICHIGAN
TAX EXEMPT INCOME FUND, PUTNAM
MINNESOTA TAX EXEMPT INCOME
FUND II, PUTNAM NEW JERSEY TAX
EXEMPT INCOME FUND, PUTNAM NEW
YORK TAX EXEMPT INCOME TRUST,
PUTNAM OHIO TAX EXEMPT INCOME
FUND II, PUTNAM PENNSYLVANIA
TAX EXEMPT INCOME FUND, PUTNAM
CALIFORNIA TAX EXEMPT MONEY
MARKET FUND, and PUTNAM NEW
YORK TAX EXEMPT MONEY MARKET
FUND,

        Defendants.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441(b) and 1446, and 15 U.S.C. §§ 77p(c) and 78bb(f)(2), all

Defendants hereby remove to this Court the above-captioned civil action, originally filed in the

Suffolk County Superior Court of the Commonwealth of Massachusetts, entitled *Adam Press v.*

*Putnam Investment Funds, et al.*, Civil Action No. 05-1295-F ("Subject Action"). As grounds

for removal, Defendants state as follows:

### I.    Proceedings To Date

1.    On April 4, 2005, plaintiff Brian Press, purportedly on behalf of himself and

others similarly situated (collectively, "Plaintiffs"), filed the Subject Action against Defendants

in the Commonwealth of Massachusetts's Suffolk County Superior Court. A true and accurate copy of Plaintiffs' complaint ("Complaint") is attached hereto as Exhibit A.

2.      On April 6, 2005, a copy of the Complaint was delivered to the office of Charles Haldeman, Jr. as an attachment to a letter in which counsel for Plaintiffs purported to make demand on Defendants pursuant to Chapter 93A of the Massachusetts General Law. Summonses and copies of the Complaint were thereafter delivered to the offices of Putnam Investments, LLC, on April 22, 2005. No Defendant has filed any answer or other response in the Subject Action, and no other pleadings have been filed in the case.

## II.    Timeliness Of Removal

3.      For removal to be effective under 28 U.S.C. § 1446(b), the removal notice must be filed with a district court within thirty days of a defendant's receipt of the initial pleading through service or otherwise. This notice is filed within thirty days of Defendants' notice of the Complaint.

## III.    Grounds For Removal

4.      The Subject Action is brought as a putative class action under Massachusetts Rule of Civil Procedure 23. Plaintiffs have defined their proposed class to include the owners of certain securities issued by Defendants (Class B shares) which are subject to a "contingent deferred sales charge," or "CDSC," in the event the shares are redeemed "prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after October 28, 2003." (Exhibit A at ¶ 1).

5.      The Defendants are all registered investment companies, organized as Massachusetts business trusts, which are regulated under the Investment Company Act of 1940 ("the ICA"), 15 U.S.C. §§ 80a-1, *et seq.*, and which are authorized to issue shares to the public in

one or more investment series pursuant to registration statements filed with the U.S. Securities and Exchange Commission under the Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.* Each such investment series is commonly referred to as a "mutual fund."

6.    The Complaint alleges that Defendants' mutual funds were "the subject of improper market timing." (Exhibit A at ¶ 8). It further alleges, inconsistently, that the funds "engag[ed] in . . . market timing, which indicated . . . that the interests of the fund shareholders was not the highest priority . . . that they engaged in unfair business practices, and that their integrity was seriously compromised." (*Id.* at ¶ 20). The Complaint defines "market timing" as an "investment strategy that involves the short-term trading of securities to take advantage of market fluctuations. . . [which harms] long-term shareholders." (*Id.* at ¶ 17).

7.    According to the Complaint, Defendants' alleged misconduct conflicted with the representations they made to prospective purchasers of Class B shares:  that Defendants would make "the interests of fund shareholders their highest priority. . . . [and] would continue to conduct [their] business at the same level of integrity while purchasers of B shares held those shares." (Exhibit A at ¶¶ 18-19).

8.    In addition, according to the Complaint, Defendants' alleged misconduct has caused them to desire to redeem their Class B shares. (Exhibit A at ¶ 25). Plaintiffs claim, however, that upon any redemption, they will be required to pay the CDSC. (*Id.* at ¶ 26). Plaintiffs further claim that Defendants' alleged actions "render it inequitable for Defendants to collect the Contingent Deferred Sales Charge from Plaintiff and all Class members who elect to withdraw their funds." (*Id.* at ¶ 31). The pleading seeks relief in the amount of the CDSC that would be imposed upon the redemption of the Plaintiffs' shares." (*Id.*).

- 4 -

9.      The Complaint further claims that "substantial redemptions by shareholders . . . [and] the decreased inflow of funds to defendants," following disclosure of market timing in Defendants' mutual funds, constituted a breach of the contract formed between Plaintiffs and Defendants when Plaintiffs purchased their shares.  (*Id.* at ¶ 3).

10.     This Court has subject matter jurisdiction and removal is proper under 28 U.S.C. § 1441(a), and under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(c), 78bb(f)(2).  SLUSA provides that "no covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  *Id.* § 77p(b), and § 78bb(f)(1).  SLUSA further authorizes removal "so that a federal court may evaluate the defense in advance of any step in the state litigation."  *Kircher v. Putnam Funds Trust,* 373 F.3d 847, 848 (7th Cir. 2004) (citing 15 U.S.C. §§ 77p(c), 78bb(f)(2)).

11.     A "covered class action" is one in which "damages are sought on behalf of more than 50 persons or prospective class members, and questions of law and fact common to those persons . . . predominate over any questions affecting only individual persons or members."  15 U.S.C. §§ 77p(f)(2)(A)(i); *see also* 15 U.S.C. § 78bb(f)(5)(B)(i).  Class B shares in Defendants' mutual funds are securities issued by investment companies pursuant to registration statements filed with the SEC under the ICA, and are therefore "covered securities."  *See* 15 U.S.C. §§ 77r(b)(2), 78bb(f)(5)(E).

12.     In this case, the Complaint purports to be a class action on behalf of "thousands" of investors.  (Exhibit A at ¶ 10).  As discussed above, it alleges misrepresentations and other

forms of securities manipulation in connection with both the purchase and sale of Class B shares issued by Defendants. It further purports to be brought under state law. The case is therefore preempted under SLUSA, and this Court has jurisdiction to consider whether the case must be dismissed. *Kircher,* 373 F.3d at 848.

13.     Plaintiffs have also recently made a written demand for relief of Defendants based on Massachusetts General Laws, Chapter 93A. That demand (attached hereto as Exhibit B), is based on the same allegations of misconduct as are asserted in the Complaint. In particular, it asserts that Defendants' actions violated section 2 of Chapter 93A, which prohibits unfair and deceptive acts and practices in the conduct of any trade or commerce within the Commonwealth of Massachusetts. M.G.L. c. 93A, § 2(a).

14.     Plaintiffs' description of the members of the putative class as individuals who "hold[]" shares is irrelevant to this analysis because, as Plaintiffs acknowledge, the CDSC becomes applicable upon an individual's *purchase* of shares and becomes payable upon the *sale* of those shares. (Exhibit A at ¶ 9). *See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1345 (11th Cir. 2002) ("[T]hat class members purchased *and then retained* their Growth Fund shares does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase") (emphasis in original), *cert. denied*, 537 U.S. 950 (2002). In addition, the core misconduct alleged in the Complaint is the "short term trading" of Class B shares in Defendants' mutual funds, as part of a "market timing" strategy to "take advantage of market fluctuations." (Exhibit A at ¶ 17). Claims relating to such trades are also made in connection with the purchase or sale of securities. *See Kircher v. Putnam Funds Trust,* 403 F.3d 478, 483-84 (7th Cir. 2005).

15.     Plaintiffs' claims also give rise to federal questions and are therefore removable under 28 U.S.C. § 1441(b). The "misconduct" asserted in the Complaint focuses on the impact that alleged market timing had on the price, or Net Asset Value ("NAV"), of Class B shares in Defendants' funds. (Exhibit A at ¶¶ 16-17). It further claims that because of Defendants' misconduct, including market timing, Plaintiffs desire to redeem their shares but do not want to pay the CDSC when they do so. (*Id.* at ¶¶ 2, 31). Plaintiffs' claims therefore present issues that arise under federal securities law, including the ICA. *See* 15 U.S.C. § 80a-49; *see also D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 99-101 (2d Cir. 2001) (removal of securities claim upheld where substantial federal question presented), *cert. denied*, 534 U.S. 1066 (2001).

16.     Plaintiffs cannot avoid federal jurisdiction through the "artful pleading" by which they attempt to disguise their federal action in the garb of state law claims. *See D'Alessio,* 258 F.3d at 103 (Plaintiff's state law claims "necessarily require[d] a court to construe both the federal law governing securities trading on a national exchange and the NYSE's role, as defined under federal law, in enforcing and monitoring a member's compliance with those laws," and thus were preempted by federal law). Removal based upon federal question jurisdiction is therefore proper. *See* 28 U.S.C. § 1441(b).

17.     Venue in this District is proper pursuant to 28 U.S.C. § 1441(a) and 15 U.S.C. §§ 77p(c), 78bb(f)(2) because the Subject Action is pending in a state court within this District.

18.     In accordance with 28 U.S.C. § 1446(d), defendants certify that a Notice of Filing of this Notice of Removal will be served promptly on Plaintiffs through their counsel of record and filed promptly with the Clerk of the Court for the Suffolk County Superior Court.

19.     Included with this Notice of Removal is a filing fee of $250, as required by 28 U.S.C. § 1914.

20.    Pursuant to Local Rule 81.1(a), within thirty days from the filing of this Notice of Removal, Defendants will file certified or attested copies of all records and proceedings in the Suffolk County Superior Court and a certified or attested copy of all docket entries in the Suffolk County Superior Court.

### IV.    "Market Timing" Federal Multidistrict Litigation

21.    Plaintiffs' Complaint is a federal securities action, not a state contract action, and involves questions of fact and law common to those in numerous "mutual fund market timing" cases which the federal Judicial Panel on Multidistrict Litigation ("JPML") has previously transferred to the U.S. District Court for the District of Maryland for coordinated or consolidated pretrial proceedings. (*In re Mutual Funds Investment Litigation*, MDL No. 1586). Accordingly, along with the filing of this Notice in this Court, and as required by JPML Rule 7.5(e), a Notice of Tag-Along Action will be filed with the JPML.

WHEREFORE, Defendants respectfully request that this case be removed from state court to the United States District Court for the District of Massachusetts.

Respectfully Submitted,

John D. Donovan, Jr. (BBO#130950)
ROPES & GRAY LLP
One International Place
Boston, MA  02110-0624
Telephone: (617) 951-7000
Fax: (617) 951-7050

Thomas B. Smith
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Telephone: (202) 508-4600
Fax: (202) 508-4650

Counsel for PUTNAM INVESTMENT FUNDS,
PUTNAM FUNDS TRUST, PUTNAM TAX-FREE
INCOME TRUST, PUTNAM ASSET
ALLOCATION FUND, PUTNAM TAX SMART
FUNDS TRUST, PUTNAM INTERNATIONAL
EQUITY FUND, PUTNAM INVESTORS FUND,
PUTNAM MONEY MARKET FUND, PUTNAM
MUNICIPAL INCOME FUND, PUTNAM NEW
OPPORTUNITIES FUND, PUTNAM OTC &
EMERGING GROWTH FUND, PUTNAM
PREFERRED INCOME FUND, PUTNAM
STRATEGIC INCOME FUND, PUTNAM TAX
EXEMPT INCOME FUND, PUTNAM TAX
EXEMPT MONEY MARKET FUND, PUTNAM
U.S. GOVERNMENT INCOME TRUST,
PUTNAM UTILITIES GROWTH AND INCOME
FUND, PUTNAM VISTA FUND, PUTNAM
VOYAGER FUND, PUTNAM AMERICAN
GOVERNMENT INCOME FUND, PUTNAM
ASIA PACIFIC GROWTH FUND, PUTNAM
BALANCED RETIREMENT FUND, PUTNAM
CAPITAL APPRECIATION FUND, PUTNAM
CLASSIC EQUITY FUND, PUTNAM
CONVERTIBLE INCOME-GROWTH TRUST,
PUTNAM DISCOVERY GROWTH FUND,
PUTNAM DIVERSIFIED INCOME TRUST,
PUTNAM EQUITY INCOME FUND, PUTNAM
EUROPE EQUITY FUND, PUTNAM GLOBAL
EQUITY FUND, PUTNAM GLOBAL INCOME
TRUST, PUTNAM GLOBAL NATURAL
RESOURCES FUND, PUTNAM HEALTH
SCIENCES TRUST, PUTNAM HIGH YIELD
ADVANTAGE FUND, PUTNAM HIGH YIELD
TRUST, PUTNAM INCOME FUND, PUTNAM
INTERMEDIATE U.S. GOVERNMENT INCOME
FUND, THE GEORGE PUTNAM FUND OF
BOSTON, THE PUTNAM FUND FOR GROWTH
AND INCOME, PUTNAM ARIZONA TAX
EXEMPT INCOME FUND, PUTNAM
CALIFORNIA TAX EXEMPT INCOME FUND,
PUTNAM FLORIDA TAX EXEMPT INCOME
FUND, PUTNAM MASSACHUSETTS TAX
EXEMPT INCOME FUND II, PUTNAM
MICHIGAN TAX EXEMPT INCOME FUND,
PUTNAM MINNESOTA TAX EXEMPT

INCOME FUND II, PUTNAM NEW JERSEY
TAX EXEMPT INCOME FUND, PUTNAM NEW
YORK TAX EXEMPT INCOME TRUST,
PUTNAM OHIO TAX EXEMPT INCOME FUND
II, PUTNAM PENNSYLVANIA TAX EXEMPT
INCOME FUND, PUTNAM CALIFORNIA TAX
EXEMPT MONEY MARKET FUND, and
PUTNAM NEW YORK TAX EXEMPT MONEY
MARKET FUND,

Dated: May 4, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 4th day of

May, 2005, by first class mail, upon the following counsel of record:

David Pastor
John C. Martland
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906

Rabin & Peckel LLP
275 Madison Ave.
Suite 420
New York, NY 10016

Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Carisa A. Klemeyer (BBO# 655045)

# Exhibit A



# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                        SUPERIOR COURT DEPARTMENT
                                    OF THE TRIAL COURT

---------------------------------------------X
ADAM PRESS,                              :   Case No.  05-1295 F
                                        :
                    Plaintiff,          :
                                        :
        - against -                     :
                                        :
PUTNAM INVESTMENT FUNDS, PUTNAM         :       **CLASS ACTION**
FUNDS TRUST, PUTNAM TAX-FREE INCOME     :       **COMPLAINT**
TRUST, PUTNAM ASSET ALLOCATION FUND,    :
PUTNAM TAX SMART FUNDS TRUST, PUTNAM    :       **JURY TRIAL DEMANDED**
INTERNATIONAL EQUITY FUND, PUTNAM       :
INVESTORS FUND, PUTNAM MONEY MARKET     :
FUND, PUTNAM MUNICIPAL INCOME FUND,     :
PUTNAM NEW OPPORTUNITIES FUND, PUTNAM   :
OTC & EMERGING GROWTH FUND, PUTNAM      :
PREFERRED INCOME FUND, PUTNAM           :
STRATEGIC INCOME FUND, PUTNAM TAX       :
EXEMPT INCOME FUND, PUTNAM TAX EXEMPT   :
MONEY MARKET FUND, PUTNAM U.S.          :
GOVERNMENT INCOME TRUST, PUTNAM         :
UTILITIES GROWTH AND INCOME FUND,       :
PUTNAM VISTA FUND, PUTNAM VOYAGER       :
FUND, PUTNAM AMERICAN GOVERNMENT        :
INCOME FUND, PUTNAM ASIA PACIFIC        :
GROWTH FUND, PUTNAM BALANCED            :
RETIREMENT FUND, PUTNAM CAPITAL         :
APPRECIATION FUND, PUTNAM CLASSIC       :
EQUITY FUND, PUTNAM CONVERTIBLE         :
INCOME-GROWTH TRUST, PUTNAM             :
DISCOVERY GROWTH FUND, PUTNAM           :
DIVERSIFIED INCOME TRUST, PUTNAM EQUITY :
INCOME FUND, PUTNAM EUROPE EQUITY       :
FUND, PUTNAM GLOBAL EQUITY FUND,        :
PUTNAM GLOBAL INCOME TRUST, PUTNAM      :
GLOBAL NATURAL RESOURCES FUND,          :
PUTNAM HEALTH SCIENCES TRUST, PUTNAM    :
HIGH YIELD ADVANTAGE FUND, PUTNAM       :
HIGH YIELD TRUST, PUTNAM INCOME FUND,   :
PUTNAM INTERMEDIATE U.S. GOVERNMENT     :

RECEIVED

APR 04 2005

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

Received by the
Office of Ed Haldeman

APR   6 2005

**PUTNAM INVESTMENTS**

00004482.WPD ; 1

INCOME FUND, THE GEORGE PUTNAM FUND       :
OF BOSTON, THE PUTNAM FUND FOR GROWTH     :
AND INCOME, PUTNAM ARIZONA TAX EXEMPT     :
INCOME FUND, PUTNAM CALIFORNIA TAX        :
EXEMPT INCOME FUND, PUTNAM FLORIDA        :
TAX EXEMPT INCOME FUND, PUTNAM            :
MASSACHUSETTS TAX EXEMPT INCOME FUND      :
II, PUTNAM MICHIGAN TAX EXEMPT INCOME     :
FUND, PUTNAM MINNESOTA TAX EXEMPT         :
INCOME FUND II, PUTNAM NEW JERSEY TAX     :
EXEMPT INCOME FUND, PUTNAM NEW YORK       :
TAX EXEMPT INCOME TRUST, PUTNAM OHIO      :
TAX EXEMPT INCOME FUND II, PUTNAM         :
PENNSYLVANIA TAX EXEMPT INCOME FUND,      :
PUTNAM CALIFORNIA TAX EXEMPT MONEY        :
MARKET FUND, and PUTNAM NEW YORK TAX      :
EXEMPT MONEY MARKET FUND,                 :
                                          :
                    Defendants.           :
-----------------------------------------X

        Plaintiff, by his undersigned attorneys, on personal knowledge as to himself and his

acts and on information and belief as to all other matters, based upon an investigation by Plaintiff's

counsel, alleges as follows:

## INTRODUCTION

        1. This is a class action brought on behalf plaintiff and all other holders of Class B

shares of Putnam mutual funds as of October 28, 2003 which are still subject to a Contingent

Deferred Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the

expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on

or after October 28, 2003. When a Class B shareholder withdraws money from a particular Putnam

Fund by redeeming shares of that fund, a percentage of the proceeds is charged by Putnam before

the balance is delivered to the shareholder. Putnam calls this penalty a CDSC. Typically, the CDSC

00004482.WPD ; 1                          2

charge is 5% for withdrawals in the first year after purchase, 4% in the second, 3% in the third and fourth, 2% in the fifth, and 1% in the sixth.

2. This claim is based upon the fact that Putnam through certain of its employees (and agents) engaged in misconduct constituting a breach of contract with holders of Class B shares in a Putnam Fund. Those holders of Class B shares who wish to cease doing business with the Fund may only do so by paying a penalty. In fact, such holders should be given the opportunity to withdraw money from Putnam Funds without a penalty because an implied term of the agreement pursuant to which the investments were made was that Putnam would conduct itself with a high degree of integrity and the fact that Putnam did not so conduct itself amounts to a breach of contract, so that Class B shareholders should have the opportunity to withdraw their funds without penalty. Defendants' misconduct is also a breach of their obligation to act fairly and in good faith with respect to their contract, as well as a breach of their fiduciary duties of care, loyalty, and good faith.

3. The following facts and circumstances alleged below constitute a breach of the agreement, and the covenants of good faith and fair dealing, between defendants and class members in that defendants' actions give rise to serious doubts concerning the integrity of defendants. In particular, (a) the payment of $110 million in disgorgement, fines and penalties; (b) the specificity of the wrongdoing alleged by the governmental agencies; (c) the substantial redemptions by shareholders following the charges being made public; (d) the adverse reporting in the media; (e) the plethora of actions, including class actions, commenced against defendants; (f) the increased outflow of shareholder funds from the defendants, and the decreased inflow of funds to defendants, giving rise to possible adverse consequences for class members, i.e. among other things, increased administrative costs and forced sales of stock to raise money for redemptions.

00004482.WPD ; 1                                    3

4. Class members should not be forced to perform under an agreement which has been breached by defendants. In particular, class members should be free to decide whether, under the circumstances, they wish to remain shareholders without the disincentive of a penalty if they decide to redeem their shares and shareholders who were penalized for redeeming their shares after the above charges were made public should be refunded the amount of the penalty.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Defendants Putnam as they have their headquarters and do substantial business in the Commonwealth of Massachusetts.

6. Venue is proper as Defendants Putnam have their principal place of business in Boston, Suffolk County, Massachusetts. The Defendants have, at all times material to this complaint, conducted business in this Commonwealth related to the events giving rise to the claims asserted in this complaint and are registered to do business in the Commonwealth of Massachusetts. Many of the witnesses and a substantial number of the documents and sources of proof are located in Massachusetts.

## PARTIES

7. Plaintiff Adam Press was a holder of 405 shares of Putnam International New Opportunity Fund B shares issued by Putnam as of October 28, 2003.

8. Defendants Putnam Investment Funds, Putnam Funds Trust, Putnam Tax-Free Income Trust, Putnam Asset Allocation Fund, Putnam Tax Smart Funds Trust, Putnam International Equity Fund, Putnam Investors Fund, Putnam Money Market Fund, Putnam Municipal Income Fund, Putnam New Opportunities Fund, Putnam OTC & Emerging Growth Fund, Putnam Preferred Income Fund, Putnam Strategic Income Fund, Putnam Tax Exempt Income Fund, Putnam Tax Exempt Money Market Fund, Putnam U.S. Government Income

00004482.WPD ; 1                         4

Trust, Putnam Utilities Growth and Income Fund, Putnam Vista Fund, Putnam Voyager Fund,

Putnam American Government Income Fund, Putnam Asia Pacific Growth Fund, Putnam

Balanced Retirement Fund, Putnam Capital Appreciation Fund, Putnam Classic Equity Fund,

Putnam Convertible Income-Growth Trust, Putnam Discovery Growth Fund, Putnam Diversified

Income Trust, Putnam Equity Income Fund, Putnam Europe Equity Fund, Putnam Global Equity

Fund, Putnam Global Income Trust, Putnam Global Natural Resources Fund, Putnam Health

Sciences Trust, Putnam High Yield Advantage Fund, Putnam High Yield Trust, Putnam Income

Fund, Putnam Intermediate U.S. Government Income Fund, The George Putnam Fund of

Boston, The Putnam Fund for Growth and Income, Putnam Arizona Tax Exempt Income Fund,

Putnam California Tax Exempt Income Fund, Putnam Florida Tax Exempt Income Fund,

Putnam Massachusetts Tax Exempt Income Fund II, Putnam Michigan Tax Exempt Income

Fund, Putnam Minnesota Tax Exempt Income Fund II, Putnam New Jersey Tax Exempt Income

Fund, Putnam New York Tax Exempt Income Trust, Putnam Ohio Tax Exempt Income Fund II,

Putnam Pennsylvania Tax Exempt Income Fund, Putnam California Tax Exempt Money Market

Fund, and Putnam New York Tax Exempt Money Market Fund, (collectively, "Putnam") are

open-end registered investment companies organized under the laws of the Commonwealth of

Massachusetts.  Putnam maintains its principal executive offices at One Post Office Square,

Boston, Suffolk County, MA 02109.  Putnam is the registrant under the Securities Act of 1933

and Investment Company Act of 1940.  Putnam has approximately 101 mutual funds which have

as many as several classes of shares (A, B, C, M, R and Y) for each fund.  Putnam funds were

the subject of improper market timing.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of the Class, consisting of all holders of Class B Shares of Putnam mutual funds as of October 28, 2003 which are still subject to a CDSC being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after October 28, 2003.

10. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class. Record owners and members of the Class may be identified from records maintained by Putnam and may be notified of the pendency of this action by mail, using the form of notice similar to that used in class actions.

11. Plaintiff's claims are typical of the claims of the putative Class members. Specifically, Plaintiff claims that Defendants' conduct injured Plaintiff and Class members alike by assessing CDSC fees to all Class members who redeem their shares on or after October 28, 2003.

12. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class;

(a) Whether defendants has breached its fiduciary duty to Plaintiff and the Class;

(b) Whether defendants has breached its duties of good faith and fair dealing; and

(c) Whether defendants' conduct constitutes a breach of contract;

00004482.WPD ; 1                                      6

13. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class action litigation to vigorously prosecute this action on behalf of the putative class members.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individual for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FACTS

**BACKGROUND**

15. A Mutual Fund is a fund that is managed by an investment company that manages the money of its shareholders.

16. Mutual funds are priced once a day, at 4:00 p.m. EST. The price, known as the Net Asset Value ("NAV"), generally reflects the closing prices of the securities that comprise a given fund's portfolio, plus the value of any cash that the fund manager maintains for the fund, divided by the number of outstanding shares.

17. Market timing is an investment strategy that involves the short-term trading of securities to take advantage of market fluctuations. Market timing is often employed where one can predict with reasonable certainty the effect on a particular security. Market timing works to the detriment of long-term shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b) market timing may add to the transactional costs of the fund because of

00004482.WPD ; 1                                   7

more frequent purchases and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market timing may result in managers having to sell stock into a falling market. Where money is not invested in the fund, but is kept in cash, then the fund's shareholders are deprived of the advantages of being fully invested in an appreciating stock market.

### THE CLASS B SHARES

18. The Putnam Funds claims that the interests of fund shareholders their highest priority. They had a reputation for good faith and fair dealing, and for strict adherence to their duties as a fiduciary: loyalty, candor, and due care which eschews any sort of unfair business practices.

19. Putnam contracted, agreed, represented and warranted that it would continue to conduct its business at the same level of integrity while purchasers of B shares held those shares.

20. Putnam violated its agreement by engaging in various forms of misconduct, including market timing, which indicated, among other things, that the interests of the fund shareholders was not the highest priority, that they did not act in good faith, that they engaged in unfair business practices, and that their integrity was seriously compromised. Under these circumstances, holders of B shares should be allowed to redeem their shares without penalty.

21. Putnam has been the subject to a series of investigations by federal and state regulators.

### Governmental Action

22. On October 28, 2003, the end of the Class Period, the SEC and the Massachusetts Attorney General's Office announced the filing of actions in both federal and state court in

Massachusetts as well as the commencement of an administrative proceeding in the Division of Enforcement of the SEC against Putnam arising from its market timing activities.

23. On April 8, 2004, it was announced that Putnam had settled its charges with the SEC and Massachusetts Attorney General's Office. In connection therewith, the SEC filed an Order Making Findings and Imposing Supplemental Remedial Sanctions settling the matter. Pursuant to the Order, the SEC made a litany of findings constituting misconduct, $50 million was to be paid in disgorgement and $5 million was to be paid in civil penalties, and a number of remedial initiatives would be instituted. In the settlement with the Massachusetts Attorney General Office, it was announced that Putnam had admitted wrongdoing in allowing some managers and certain plan participants to market time its mutual funds and was order to pay a $50 million fine and $5 million in disgorgement.

24. In sum, a total of $110 million was paid in disgorgement, fines and penalties as a result of the wrongful conduct complained of herein. Further a number of costly remedial initiatives were instituted to prevent such future conduct.

25. Notwithstanding the foregoing, Class Members that wish to sell their shares and so cease doing business with Putnam have been and will be required to pay a significant charge.

26. Putnam's breach of contract – its failure to maintain, in the words of Benjamin Cardozo, "the punctilio of an honor most sensitive" – allows Plaintiff and the other members of the Class to decide whether they wish to continue to invest in a tainted company and, if he wishes, to sell his shares without penalty. Plaintiff and the other members of the Class should not be required to keep their money at risk with an allegedly unethical or dishonest company which has breached its contract with Plaintiff and the other members of the Class.

00004482.WPD ; 1                                    9

## COUNT I
### (Breach of Contract)

27.  Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

28.  Defendants agreed to perform investment advisor and management services to Plaintiff and the other members of the Class.

29.  Defendants had an implied contractual duty to perform the investment advisor and management services in good faith.

30.  Defendants breached its contract with Plaintiff and all Class members and the covenant of good faith and fair dealing in the performance of those contracts, by:

(a)  engaging in various forms of misconduct, including market timing;

(b)  by failing to act in the best interests of the Class B shareholders; and

(c)  by engaging in unfair and deceptive trade practices in the performance of their contractual duties.

31.  Defendants' breaches of contract and the implied covenant of good faith and fair dealing were so material as to justify Plaintiff and all class members to terminate the contracts, and render it inequitable for Defendants to collect the Contingent Deferred Sales Charge from Plaintiff and all Class members who elect to withdraw their funds.

00004482.WPD ; 1                                    10

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff on behalf of himself and the Class prays for judgment as

follows:

(i)    Certifying that this action may be maintained as a class action pursuant to the

provisions of Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of

all holders of Putnam Class B shareholders during the Class Period;

(ii)   Designating Plaintiff and Plaintiff's counsel as class representative and class

counsel, respectively;

(iii)  Entering Judgment against Defendants and in favor of Plaintiff and the Class on

all claims:

(iv)   Requiring Defendants to pay Plaintiff's and each Class member their actual

damages;

(iv)   Granting Plaintiff and the other members of the Class equitable relief from the

Contingent Deferred Sales Charge;

(v)    Requiring Defendants to pay  Plaintiff's reasonable attorney's fees and costs of

suit; and

(vi)   Such other and further relief that the Court deems just and proper.

00004482.WPD ; 1                                11

## JURY DEMAND

Plaintiff hereby demands a jury trial on all such issues that are triable before a

jury.

Dated: April 4, 2005

Respectfully submitted

David Pastor (BBO#391000)
John C. Martland (BBO#322980)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

RABIN & PECKEL LLP
275 Madison Avenue
Suite 420
New York, NY 10016
(212) 880-3722

GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
(310) 201-9150

**ATTORNEYS FOR PLAINTIFF**

00004482.WPD ; 1                    12

# Exhibit B

# GILMAN AND PASTOR, LLP

ATTORNEYS AT LAW
STONEHILL CORPORATE CENTER
999 BROADWAY, SUITE 500
SAUGUS, MASSACHUSETTS 01906

TELEPHONE: 781/231-7850

FACSIMILE: 781/231-7840

WWW.GILMANPASTOR.COM

Received by the
Office of Ed Haldeman

April 4, 2005

APR   6 2005

## VIA CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

# PUTNAM INVESTMENTS

Charles Haldeman, Jr., CEO
The Putnam Funds
One Post Office Square
Boston, MA 02109

### DEMAND FOR RELIEF PURSUANT TO M.G.L., CHAPTER 93A, § 9(3)

Dear Mr. Haldeman:

We represent Adam Press, individually and as a representative of a class of all persons similarly situated, as defined below. This is a written demand for relief pursuant to Massachusetts General Laws, Chapter 93A, §9(3).

### CLAIMANTS AND THE CLASS:

Adam Press ("Claimant") makes this demand on behalf of himself and a class comprised of all holders of Class B shares of Putnam mutual funds as of October 28, 2003 which are still subject to a Contingent Deferred Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after October 28, 2003 (the "Class").

Claimant Adam Press was a holder of 405 shares of Putnam International New Opportunity Fund B shares issued by Putnam as of October 28, 2003. In the event that Claimant seeks to redeem his Class B shares of Putnam International New Opportunity Fund B shares after October 28, 2003 and prior to six years from his purchase of these shares, he will be assessed a Contingent Deferred Sales Charge ("CDSC") for early redemption of these shares.

Defendants Putnam Investment Funds, Putnam Funds Trust, Putnam Tax-Free Income Trust, Putnam Asset Allocation Fund, Putnam Tax Smart Funds Trust, Putnam International Equity Fund, Putnam Investors Fund, Putnam Money Market Fund, Putnam Municipal Income Fund, Putnam New Opportunities Fund, Putnam OTC & Emerging Growth Fund, Putnam Preferred Income Fund, Putnam Strategic Income Fund, Putnam Tax Exempt Income Fund,

00004495.WPD ; 1

Charles Haldeman, Jr., CEO
The Putnam Funds
April 4, 2005
Page 2


Putnam Tax Exempt Money Market Fund, Putnam U.S. Government Income Trust, Putnam
Utilities Growth and Income Fund, Putnam Vista Fund, Putnam Voyager Fund, Putnam
American Government Income Fund, Putnam Asia Pacific Growth Fund, Putnam Balanced
Retirement Fund, Putnam Capital Appreciation Fund, Putnam Classic Equity Fund, Putnam
Convertible Income-Growth Trust, Putnam Discovery Growth Fund, Putnam Diversified Income
Trust, Putnam Equity Income Fund, Putnam Europe Equity Fund, Putnam Global Equity Fund,
Putnam Global Income Trust, Putnam Global Natural Resources Fund, Putnam Health Sciences
Trust, Putnam High Yield Advantage Fund, Putnam High Yield Trust, Putnam Income Fund,
Putnam Intermediate U.S. Government Income Fund, The George Putnam Fund of Boston, The
Putnam Fund for Growth and Income, Putnam Arizona Tax Exempt Income Fund, Putnam
California Tax Exempt Income Fund, Putnam Florida Tax Exempt Income Fund, Putnam
Massachusetts Tax Exempt Income Fund II, Putnam Michigan Tax Exempt Income Fund,
Putnam Minnesota Tax Exempt Income Fund II, Putnam New Jersey Tax Exempt Income Fund,
Putnam New York Tax Exempt Income Trust, Putnam Ohio Tax Exempt Income Fund II,
Putnam Pennsylvania Tax Exempt Income Fund, Putnam California Tax Exempt Money Market
Fund, and Putnam New York Tax Exempt Money Market Fund,  (collectively, "Putnam") are
open-end registered investment companies organized under the laws of the Commonwealth of
Massachusetts.  Putnam maintains its principal executive offices at One Post Office Square,
Boston, Suffolk County, MA 02109.  Putnam is the registrant under the Securities Act of 1933
and Investment Company Act of 1940.  Putnam has approximately 101 mutual funds which have
as many as several classes of shares (A, B, C, M, R and Y) for each fund.  Putnam funds were the
subject of improper market timing.

## UNFAIR OR DECEPTIVE ACTS OR PRACTICES:

Putnam (hereinafter "Respondent") has engaged in unfair or deceptive acts or practices
including, but not limited to, the following:

The Putnam Funds were subject to improper market timing.  Market timing is an
investment strategy that involves the short-term trading of securities to take advantage of market
fluctuations.  Market timing is often employed where one can predict with reasonable certainty
the effect on a particular security.  Market timing works to the detriment of long-term
shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the
timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b)
market timing may add to the transactional costs of the fund because of more frequent purchases
and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market
timing may result in managers having to sell stock into a falling market.

Respondent represented that the interests of Putnam Funds shareholders was its highest
priority.  Putnam contracted, agreed, represented and warranted that it would conduct its

00004495.WPD ; 1

004/019

Charles Haldeman, Jr., CEO
The Putnam Funds
April 4, 2005
Page 3

business at the highest level of integrity while purchasers of Putnam Funds B shares held those
shares. However, Putnam violated its agreement by engaging in various forms of misconduct,
including market timing, which indicated, among other things, that the interests of the fund
shareholders was not the highest priority, that they did not act in good faith, that they engaged in
unfair business practices, and that their integrity was seriously compromised. Putnam has been
the subject to a series of investigations by federal and state regulators.

On October 28, 2003, the end of the Class Period, the SEC and the Massachusetts
Attorney General's Office announced the filing of actions in both federal and state court in
Massachusetts as well as the commencement of an administrative proceeding in the Division of
Enforcement of the SEC against Putnam arising from its market timing activities.

On April 8, 2004, it was announced that Putnam had settled its charges with the SEC and
Massachusetts Attorney General's Office. In connection therewith, the SEC filed an Order
Making Findings and Imposing Supplemental Remedial Sanctions settling the matter. Pursuant
to the Order, the SEC made a litany of findings constituting misconduct, $50 million was to be
paid in disgorgement and $5 million was to be paid in civil penalties, and a number of remedial
initiatives would be instituted. In the settlement with the Massachusetts Attorney General Office,
it was announced that Putnam had admitted wrongdoing in allowing some managers and certain
plan participants to market time its mutual funds and was order to pay a $50 million fine and $5
million in disgorgement.

In sum, a total of $110 million was paid in disgorgement, fines and penalties as a result of
the wrongful conduct complained of herein. Further a number of costly remedial initiatives were
instituted to prevent such future conduct. Notwithstanding the foregoing, Class Members that
wish to sell their shares and so cease doing business with Putnam have been and will be required
to pay a significant charge.

The conduct of Respondents described herein is also the subject of a Complaint, with
Claimant named as representative plaintiff, filed in the Suffolk County Superior Court (copy
attached hereto). The allegations of the Complaint, which contain a more detailed description of
Respondents' misconduct, are incorporated herein by reference.

Respondent's conduct, as described herein, was willfully and knowingly in violation of
Massachusetts General Laws, Chapter 93A, §2.

**INJURIES SUFFERED:**

Claimant, as well as the other members of the Class, have been injured as a result of
Respondent's use or employment of unfair or deceptive acts or practices in that Claimant and the

00004495.WPD ; 1

Charles Haldeman, Jr., CEO
The Putnam Funds
April 4, 2005
Page 4

proposed Class have either (a) incurred actual damages in the amount of the CDSC fees assessed
to their accounts when they redeemed their Putnam Fund B shares after October 28, 2003; or (b)
will incur actual damages in the amount of the CDSC fees assessed to their accounts in the event
they redeem their Putnam Fund B shares after October 28, 2003 and prior to the expiration of the
six year period from the date of purchase of the Class B shares. The aggregate amount of these
damages cannot be determined without reference to Respondent's records. Further, depending
on the amount and susceptibility to proof of actual damages, Class members are entitled to
recover statutory damages in the sum of $25.00 for each class member. *See Leardi v. Brown,*
394 Mass. 151, 163-164, 474 N.E.2d 1094, 1103-1104 (1985).

**DEMAND FOR RELIEF:**

Claimant, on behalf of himself and all others similarly situated, demands that
Respondent:

1.    Compensate Claimant and those Class members who redeemed their Fund B
      shares after October 28, 2003 for the actual damages, namely the amount of the
      CDSC fee assessed, incurred by them or pay statutory damages of $25.00 for each
      class member pursuant to c. 93A, § 9(3), whichever results in a greater recovery
      for each individual class member;

2.    Expressly waive the implementation of all CDSC fees arising from the
      redemption of Putnam Fund B Shares by Claimant and all those Class Members
      who held Class B shares as of October 28, 2003;

3.    Reimburse Claimant and Class members for their reasonable attorneys fees and
      expenses incurred in bringing this claim.

Please be advised that Respondents have thirty (30) days to make a reasonable offer of
relief. If Respondents fail to make a reasonable offer to Claimant and the Class, Claimant will
file a claim under Chapter 93A on behalf of themselves and the Class seeking damages,
injunctive relief and attorneys' fees. You are advised that if the Court determines that

00004495.WPD ; 1

Charles Haldeman, Jr., CEO
The Putnam Funds
April 4, 2005
Page 5

Respondents' conduct was willfully or knowingly unfair or deceptive, the Court must award the
Claimant and the Class up to three times, but not less than two times, their actual damages.

Very truly yours,

John C. Martland

cc:    RABIN & PECKEL LLP
       GLANCY BINKOW & GOLDBERG LLP

00004495.WPD ; 1

05C .0923 NG

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)___Adam Press v. Putnam Investment Funds, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    ☐   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ☒   II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                   740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

    ☐   III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ☐   IV.    220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ☐   V.    150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
           YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)
           YES ☐    NO ☒
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
           YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
           YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
           YES ☐    NO ☐

    A.    If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☐    Central Division ☐    Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
           YES ☐    NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___John D. Donovan, Jr.

ADDRESS ___Ropes & Gray LLP, One International Place, Boston, MA 02110-0624

TELEPHONE NO. ___(617) 951-7000

(CategoryForm.wpd - 2/15/05)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFF
ADAM PRES **05** CV **10923** NG

**DEFENDANTS**
PUTNAM INVESTMENT FUNDS, ET AL.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  UNKNOWN
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  SUFFOLK
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
JOHN C. MARTLAND
GILMAN AND PASTOR, LLP
STONEHILL CORPORATE CENTER
999 BROADWAY, SUITE 500
SAUGUS, MA 01906
(781) 231-7850

ATTORNEYS (IF KNOWN)
JOHN D. DONOVAN, JR.
ROPES & GRAY LLP
ONE INTERNATIONAL PLACE
BOSTON, MA 02110-0624
(617) 951-7000

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/ Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☒ 850 Securities/ Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | |
|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | |

Additional OTHER STATUTES:
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE                DOCKET NUMBER

DATE  May 4, 2005

SIGNATURE OF ATTORNEY OF RECORD