UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------X

ADAM PRESS,                                    :    Civil Action No. 05-10923 (NG)
                                               :
                  Plaintiff,                   :
                                               :
         - against -                           :
                                               :
PUTNAM INVESTMENT FUNDS, PUTNAM                 :
FUNDS TRUST, PUTNAM TAX-FREE INCOME             :
TRUST, PUTNAM ASSET ALLOCATION                 :
FUND, PUTNAM TAX SMART FUNDS TRUST,            :
PUTNAM INTERNATIONAL EQUITY FUND,              :
PUTNAM INVESTORS FUND, PUTNAM                   :
MONEY MARKET FUND, PUTNAM                       :
MUNICIPAL INCOME FUND, PUTNAM NEW               :
OPPORTUNITIES FUND, PUTNAM OTC &                :
EMERGING GROWTH FUND, PUTNAM                    :
PREFERRED INCOME FUND, PUTNAM                   :
STRATEGIC INCOME FUND, PUTNAM TAX               :
EXEMPT INCOME FUND, PUTNAM TAX                  :
EXEMPT MONEY MARKET FUND, PUTNAM                :
U.S. GOVERNMENT INCOME TRUST,                  :
PUTNAM UTILITIES GROWTH AND INCOME             :
FUND, PUTNAM VISTA FUND, PUTNAM                 :
VOYAGER FUND, PUTNAM AMERICAN                   :
GOVERNMENT INCOME FUND, PUTNAM                  :
ASIA PACIFIC GROWTH FUND, PUTNAM                :
BALANCED RETIREMENT FUND, PUTNAM                :
CAPITAL APPRECIATION FUND, PUTNAM               :
CLASSIC EQUITY FUND, PUTNAM                     :
CONVERTIBLE INCOME-GROWTH TRUST,               :
PUTNAM DISCOVERY GROWTH FUND,                   :
PUTNAM DIVERSIFIED INCOME TRUST,                :
PUTNAM EQUITY INCOME FUND, PUTNAM               :
EUROPE EQUITY FUND, PUTNAM GLOBAL               :
EQUITY FUND, PUTNAM GLOBAL INCOME               :
TRUST, PUTNAM GLOBAL NATURAL                    :
RESOURCES FUND, PUTNAM HEALTH                   :
SCIENCES TRUST, PUTNAM HIGH YIELD               :
ADVANTAGE FUND, PUTNAM HIGH YIELD               :
TRUST, PUTNAM INCOME FUND, PUTNAM               :

INTERMEDIATE U.S. GOVERNMENT INCOME    :
FUND, THE GEORGE PUTNAM FUND OF    :
BOSTON, THE PUTNAM FUND FOR GROWTH    :
AND INCOME, PUTNAM ARIZONA TAX    :
EXEMPT INCOME FUND, PUTNAM    :
CALIFORNIA TAX EXEMPT INCOME FUND,    :
PUTNAM FLORIDA TAX EXEMPT INCOME    :
FUND, PUTNAM MASSACHUSETTS TAX    :
EXEMPT INCOME FUND II, PUTNAM    :
MICHIGAN TAX EXEMPT INCOME FUND,    :
PUTNAM MINNESOTA TAX EXEMPT    :
INCOME FUND II, PUTNAM NEW JERSEY    :
TAX EXEMPT INCOME FUND, PUTNAM NEW    :
YORK TAX EXEMPT INCOME TRUST,    :
PUTNAM OHIO TAX EXEMPT INCOME FUND    :
II, PUTNAM PENNSYLVANIA TAX EXEMPT    :
INCOME FUND, PUTNAM CALIFORNIA TAX    :
EXEMPT MONEY MARKET FUND, and    :
PUTNAM NEW YORK TAX EXEMPT MONEY    :
MARKET FUND,    :
   :
                 Defendants.    :
-----------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM  OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO STAY

00005434.WPD ; 1

## PRELIMINARY STATEMENT

Chief Judge Young recently denied a similar motion to stay in *Dean Delaventura v. Columbia Acorn Trust, et al.*, civil action number 05CV10793, a case almost identical to this one. There, defendants sought to stay the case pending determination by the MDL panel. Here, Defendants seek the same. There, plaintiff had made a motion to remand. Here, plaintiff has done the same. There, the court denied defendants' motion to stay. The Court should do the same here. Interestingly, Counsel for Defendants here is also counsel for the defendants in that case.[1]

There is no reason to stay this case pending a ruling of the MDL. Defendants' motion to stay is based on its assertion that this case is likely to be transferred and coordinated by the MDL. Given that this case was <u>not</u> properly removed to federal court, as plaintiff demonstrates in his previously filed motion to remand, there is no need to stay the proceedings here. Where, as here, a motion to remand for lack of subject matter jurisdiction is pending, it is far more appropriate for the Court to determine the motion to remand than to issue a stay pending MDL determination. Furthermore, as this case was properly filed in state court, it should not be subject to the multi-district litigation procedural mechanism.

Staying consideration of the motion to remand will serve no legitimate purpose other than to delay the inevitable remand of this case to state court and prevent plaintiff from promptly litigating his case on its merits. Accordingly, plaintiff requests that this Court deny defendants' motion for stay of proceedings because "[j]udicial economy will be best served by addressing the remand issue" now. *Villarreal v. Chrysler Corp.,* 1996 WL 116832, at *1 (N.D. Cal. March 12, 1996).

---

[1] For the record, Plaintiff's Counsel here is also counsel for plaintiff that case.

Defendants' motion to stay amounts to nothing more than an attempt to avoid this District's decision in *Meyer v. Putnam International Voyager Fund*, 220 F.R.D. 127 (D. Mass. 2004) (Young, C.J.), holding that removal was improper. As fully detailed in our motion to remand, this District's decision in *Meyer* for all intents and purposes is dispositive of the motion to remand here as the facts in that case are virtually identical. In *Meyer* it was alleged that defendants' engagement in market timing constituted a breach of fiduciary duty–a state cause of action. *Id.* at 128. Here, it is alleged that defendants' engagement in market timing constituted a breach of contract–a state cause of action. Both cases were brought on behalf of a class of holders of mutual funds. Both cases were improperly removed from state court under the Securities Litigation Standards Act of 1998 and the general removal statute. This District remanded the *Meyer* action back to state court. Defendants are seeking to avoid the same result here by means of a stay. Defendants apparently believe they have a better chance of resisting remand in the District of Maryland than in the District of Massachusetts. But such forum shopping provides no basis for a stay.

## FACTS

Plaintiff Adam Press filed his complaint in Suffolk County Superior Court for breach of contract against defendants. The complaint alleges that defendants engagement in market timing constituted a breach of contract. In addition, plaintiff also sent a demand letter pursuant to M.G.L., c. 93A of the Massachusetts Consumer Protection Act, which claim Plaintiff intends to amend his complaint to include upon remand. Plaintiff does not seek damages arising from the market-timing conduct of the defendants; Plaintiff only seeks to have the CDSC (contingent deferred sales charge) waived or refunded to plaintiffs who desire to sell their Mutual Fund shares.

Defendants improperly removed plaintiff's complaint to this Court, as detailed in plaintiff's previously filed motion to remand.

Defendants also filed a notice of a potential tag-along action with the MDL misrepresenting that this action was "related" to the cases the MDL had already transferred to the United States District Court for the District of Maryland ("District of Maryland"). The MDL issued a Conditional Transfer Order (the "CTO") for the transfer of this action to the District of Maryland. The CTO does not become effective until it is filed with the District of Maryland. Plaintiff has filed a notice of opposition to the CTO and made a motion to vacate the CTO which will further stay filing of the CTO until the motion is fully briefed and the MDL renders it decision. Plaintiff's motion requests the MDL vacate, or, in the alternative, stay the CTO pending determination of plaintiff's motion to remand by this Court.

Defendants have filed the instant motion for stay of proceedings in this Court. Defendants' motion, among other things, misstates nature of plaintiff's action. As detailed in his motion to remand, plaintiff's action actually presents claims and issues in common with actions previously *remanded* by this Court.

## ARGUMENT

### I.    THIS DISTRICT RECENTLY DENIED A SIMILAR MOTION TO STAY

In *Dean Delaventura v. Columbia Acorn Trust, et al.*, Chief Judge Young recently denied a motion to stay a case nearly identical to this one. In *Columbia*, defendants had sought to stay the proceedings pending determination by the MDL Panel. Defendants seek the same here. At the hearing on the motion to remand, Chief Judge Young summarily rejected defendants' motion to stay. The Court stated:

> The motion to stay is denied. For the moment I have the responsibility to determine whether this Court has jurisdiction.

*See* Transcript of June 14, 2005 Motion Hearing ("Transcript"), at p. 19, lns. 9-11, annexed hereto as Exhibit 1. *See also*, Transcript at pp. 22 , 24, 26 (motion to stay repeatedly denied). There, plaintiff had even filed his motion to remand *after* defendants had moved to stay. Here, plaintiff has filed his motion to remand *before* defendants have moved to stay. With respect to the remand motion there, Chief Judge Young indicated that he was going to begin deciding the motion:

> I see no reason to stay my hand. I will begin the analysis that I am required to exercise as a United States District Judge, carefully and with reference to the governing statutes in this, both the state law and the governing securities law statutes, the Private Securities Law Reform Act, and this SLUSA.

Transcript at p. 22, lns. 1-6. Plaintiff respectfully requests the Court do the same here and deny defendants' motion to stay and decide plaintiff's motion to remand.

## II.    A STAY IS NOT APPROPRIATE WHERE A MOTION TO REMAND IS PENDING

The pendency of an MDL motion does not in any way limit the pre-trial jurisdiction of the district court. Rule 1.5 of the Rules of Procedure For The Judicial Panel on Multidistrict Litigation provides that "[t]he pendency of a . . . conditional transfer order . . . does not affect or suspend orders or pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." *See Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670, 676 (W.D. Tex. 2001) ("until transfer is ordered by the MDL panel, the district court retains its authority to determine pre-trial motions and issues"). This is because a court's decision on a motion to stay, although discretionary, should be guided by the policies of justice and efficiency. *Boudreaux v. Metropolitan Life Ins.*, 1995 WL 83788, at *2 (E.D. La. Feb. 24, 1995). In fact, the MDL encourages courts to rule on motions to remand in cases pending transfer. Judge O'Toole

recently rejected a motion to stay proceedings pending determination of the MDL and granted

plaintiffs' motion to remand.  *In re Massachusetts Diet Drug Litig.*, 338 F,Supp. 2d 198, 201 (D.

Mass. 2004).  In denying a stay, Judge O'Toole noted that the court had received a standard letter

from the MDL advising:

> Thus your jurisdiction continues until any transfer ruling becomes effective.  If you
> have a motion pending before you in any of the actions–particularly a motion to
> remand to state court (if the action was removed to your court)–you are *encouraged
> to rule on the motion* unless you conclude that the motion raises issues likely to arise
> in other actions in the transferee court, should we order transfer, and would best be
> decided there.

*Id.*  (emphasis added).  The Court may have received a similar letter in this case.  In any event, this

Court should not stay this action and rule on the motion to remand.

Courts in similar situations have routinely denied motions to stay in order to consider a

motion for remand while an MDL transfer was pending.  *See*, *e.g.*, *Carden v. Bridgestone/Firestone,

Inc.*, 2000 WL 33520302, at *4  (S.D. Fla. Oct. 18, 2000) (court elected to hear motion for remand

and denied motion to stay as moot); *AETNA U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54

F. Supp. 2d 1042, 1048 (D. Kan. 1999) (holding that there was no reason to delay ruling on

plaintiff's motion to remand, stating, "[f]or purposes of judicial economy, the jurisdictional issue

should be resolved immediately.  If federal jurisdiction does not exist, the case can be remanded

before federal resources are further expended");  *Bellorin v. Bridgestone/Firestone, Inc.*, 236 F.

Supp.2d 670, 676 (W.D. Tex.2001) (denying stay where "issues raised by the plaintiff's motion to

remand are unique to this case and would benefit little from coordinated discovery under the MDL

panel");  *Tortola Restaurants, LP v. Kimberly -Clark, Corp.,* 987 F. Supp. 1186, 1189 (N.D. Cal.

1997) (denying motion for stay and immediately considering motion to remand where the district

court "as transferor Court retains exclusive jurisdiction until the § 1407 transfer becomes effective and as such, motions to remand should be resolved before the panel acts on the motion to transfer"); *Villarreal,* 1996 WL 116832, at *1 ("Judicial economy will be best served by addressing the remand issue because a determination on this issue will facilitate litigation in the appropriate forum"); *Kohl American Home Products Corp.*, 78 F. Supp.2d 885, 887-888 (W.D. Ark. 1999) (denying motion to stay because "the court believe[d] the best course is to decide the motion to remand"); *Lloyd v. Cabell Huntington Hospital, Inc.*, 58 F.Supp.2d 694, 696 (S.D. W. Va. 1999) ("[t]his Court cannot, however, stay proceedings in an action over which it lacks jurisdiction."); *Stern v. Mutual Life Ins. Co. of N.Y.*, 968 F.Supp. 637, 639 (N.D. Ala. 1997) ("[i]f the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay."). This Court should do the same.

Furthermore, plaintiff's motion to remand for lack of subject matter jurisdiction takes precedence over defendants' motion to stay. The First Circuit, consistent with U.S. Supreme Court precedent, applies the principle applied by the courts in the above-cited cases that subject matter jurisdiction is a threshold issue that must be determined first, before the court takes any other action in the case. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact..." *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (internal quotation marks and citations omitted); *Danca v. Private Health Care Systems, Inc.*, 185 F. 3d 1, 4 (1st Cir. 1999) ("[a] threshold issue in this case, as in every case, is subject matter jurisdiction."). In a recent decision remanding a case to the Superior Court, Judge Lindsay cited this principle, noting, "[i]t is well settled that a federal court must determine any threshold issue of subject-matter jurisdiction *before conducting any further proceedings in an action pending before*

*the court.*" *Auerbach v. General Motors Corporation*, Civil Action No. 01-11723-RCL (D. Mass. July 10, 2003) (emphasis added).[2]  Here, because a motion to remand for lack of subject matter jurisdiction is pending, this Court should first decide plaintiff's motion to remand.

Whether decided here or in the District of Maryland, the issue is whether the case belongs in federal court at all.  We address the substance of that question in our remand motion.  For present purposes we note that a Massachusetts federal court deciding whether a case may only be brought in a Massachusetts state court frustrates none of the efforts of the MDL.  As indicated below, the interest of judicial economy, as well as plaintiff's interest in the prompt resolution of his claims is furthered by this Court's considering, and deciding his motion to remand.

## III.    A STAY WILL NOT PROMOTE JUDICIAL ECONOMY

Contrary to defendants' assertion, (Defs. Mem. at 3), judicial economy will not be promoted by issuing a stay of all proceedings in this case.  Defendants' assertion is premised on the false assumption that this case will be transferred by the MDL.  In this case, judicial economy will be promoted by determining whether federal subject matter jurisdiction exists prior to any other proceedings in this Court or by the MDL panel.

In *AETNA U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, the Court denied a motion to stay similar to the stay defendants seek here,  in order to rule on the plaintiff's motion to remand because if federal subject matter jurisdiction did not exist, then the case would be "remanded before federal resources [were] further expended."  54 F. Supp.2d at 1048.  The court further held that the purposes of judicial economy would be promoted by determining the motion to remand rather than staying the action because "a stay would not affect the law" that applies to the case, and therefore

---

[2]  Attached hereto as Exhibit 2.

a transferee court would be forced to resolve a number of remand motions based, in part, on the varying state law claims alleged in each case.  *Id*. at 1047-48.[3]  Similarly, in this case, where it is clear that there is no federal subject matter jurisdiction, judicial economy would be promoted by determining the motion to remand instead of issuing a stay.

Furthermore, a stay will prejudice plaintiff in the prosecution of his action.

## IV.    DEFENDANTS' ATTEMPT TO AVOID THIS DISTRICT'S HOLDING IN *MEYER* SHOULD NOT BE ALLOWED

Plaintiff believes that the real reason defendants are seeking to stay this Court is to avoid this District's decision in *Meyer*.   As detailed in plaintiff's motion to remand, the facts of that case are almost identical to those here.  In *Meyer*, the plaintiff filed on behalf of a class of holders of shares of Putnam mutual funds alleging that defendants' market timing activities constituted a breach of fiduciary duty.  *Id.* at 128.  Here, plaintiff has filed on behalf of a class of holders of class B shares of Putnam mutual funds alleging that defendants' market timing activities constituted a breach of contract.  In *Meyer*, defendants had removed the action under SLUSA and the general removal statute.  *Id.*  Defendants have done the same here.  In *Meyer*, this District held that removal had been improper and remanded the action back to state court.  *Id.* at 129-30.  This District in *Meyer* held that "the terms of SLUSA's preemption provision, even if broadly read . . . do not extend to [plaintiff's] claims" and found "the federal claims cited by the Defendants insufficiently substantial to support an exercise of federal jurisdiction."  *Id.*  There is <u>no</u> reason why the result will be any different here.

Counsel for defendants here was also counsel in *Meyer*.  Counsel for defendants are apparently trying to avoid this District's decision in *Meyer*, believing they have a better a chance of

---

[3]  Similar reasoning was employed in *Villarreal*, 1996 WL 116832 at *1; *Tortola*, 987 F. Supp. at 1189 (*quoting Villarreal*); and *Kohl*, 78 F. Supp. 2d at 888 (*quoting Tortola*).

resisting remand in the District of Maryland than here.  Such forum shopping is improper and should

be rejected by the Court.

### **CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that defendants' motion to stay be

denied and that this Court consider plaintiff's motion to remand.

Dated:  July 11, 2005

**Respectfully submitted,**


By: /s/ John C. Martland
David Pastor (BBO# 391000)
John C. Martland (BBO# 322980)
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 01906
Telephone:  (617) 742-9700
Fax:  (617) 742-9701

RABIN & PECKEL LLP
275 Madison Avenue, Suite 420
New York, NY 10016
Telephone:  (212) 880-3722
Fax:  (212) 880-3716

GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Fax:  (310) 201-9160

Attorneys for plaintiff Adam Press

EXHIBIT 1

061405e

1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF MASSACHUSETTS |
| 2 | |
| 3 | Civil Action<br>No. 05-10793-WGY |
| 4 | |

```
 5    * * * * * * * * * * * * * * *
                                *
 6    DEAN DELAVENTURA, et al.,     *
                                *
 7            Plaintiffs,          *
                                *
 8    v.                          * MOTION HEARING
                                *
 9    COLUMBIA ACORN TRUST, et al., *
                                *
10            Defendants.         *
                                *
11    * * * * * * * * * * * * * * *
```

12    BEFORE:  The Honorable William G. Young,
                     District Judge

13

14    APPEARANCES:

15

16          GILMAN and PASTOR, LLP (By David Pastor,
        Esq. and John C. Martland, Esq.), 60 State Street,
17      37th Floor, Boston, Massachusetts 02109, on behalf
        of the Plaintiffs

18          GOODWIN PROCTER LLP (By Brian E.
        Pastuszenski, Esq. and Kevin P. McGrath, Esq.),
19      Exchange Place, 53 State Street, Boston,
        Massachusetts 02109, on behalf of Columbia Acorn
20      Trust

21          ROPES & GRAY (By Brien T. O'Connor, Esq.
        and Giselle J. Joffre, Esq.), One International
22      Place, Boston, Massachusetts 02110-2624, on behalf
        of Columbia Funds

23                                  1 Courthouse Way
24                                  Boston, Massachusetts

25                                  June 14, 2005

2

1          THE CLERK:  Calling Civil Action 05-10793,

2    Delaventura v. Columbia Acorn Trust, et al.

061405e

3    THE COURT:  Good afternoon.  And would counsel
4    identify themselves.
5    MR. PASTOR:  Good afternoon, your Honor.  David
6    Pastor, Gilman and Pastor, for the plaintiff.  With me is
7    John Martland, also for the plaintiff.
8    MR. PASTUSZENSKI:  Good afternoon, your Honor.
9    Brian Pastuszenski from the Goodwin Procter firm, here on
10   behalf of the Acorn Trust and Columbia Funds.
11   MR. MCGRATH:  And Kevin McGrath, your Honor, good
12   afternoon.
13   MR. O'CONNOR:  Good afternoon, your Honor.  Brien
14   O'Connor for the Columbia Funds.
15   THE COURT:  I'm fascinated by this.  I think
16   that -- and with you, Mr. O'Connor, is?
17   MR. O'CONNOR:  Yes, I'm sorry.
18   MS. JOFFRE:  Giselle Joffre, also for the Columbia
19   Funds.
20   THE COURT:  Thank you.  I'm fascinated by this.  I
21   think ten minutes a side will be enough.  Since I have all
22   these people on the defendants' side you can divide that up
23   or one person can argue or whatever.
24   I have prepared.  I've read the things you've
25   filed, albeit recently filed.  And I don't criticize that

□

3

1    because I set this on for hearing.  It's the defense -- it's
2    the plaintiff's motion to remand and I'll hear the
3    plaintiff.
4    MR. PASTOR:  Thank you, your Honor.  And I just
5    want to probably take perhaps less than the time the
6    Court --

Page 2

061405e

 7          THE COURT:  I'll have some questions so --

 8          MR. PASTOR:  That's fine, your Honor.  That's fine.

 9     And I want to also state, and I'm not being critical in any

10     way, as the Court wasn't, but I just received the papers

11     that, the opposition papers the defendants filed --

12          THE COURT:  You're the one who wants action.

13          MR. PASTOR:  That's correct, your Honor.

14          THE COURT:  Would you like me to give you more time

15     to brief it?  Would you like --

16          MR. PASTOR:  No, your Honor, I think, I think we're

17     fine to go ahead, your Honor.  I just wanted to --

18          THE COURT:  Either you are or you aren't.

19          MR. PASTOR:  I believe we are, your Honor.

20          THE COURT:  Very well.

21          MR. PASTOR:  That's fine.  I just --

22          THE COURT:  Then I'll hear you.

23          MR. PASTOR:  That's fine, your Honor.

24          I just think it's a relatively simple case in that

25     this case does not allege any type of misrepresentation,

▯

                                                    4

 1     fraud or deceit in connection with the purchase or sale of

 2     any security.

 3          THE COURT:  Well, what's the breach of contract

 4     here?

 5          MR. PASTOR:  I'm sorry?

 6          THE COURT:  What's the breach of contract?

 7          MR. PASTOR:  The breach of contract, it's implied

 8     breach of duty, good faith and fair dealing essentially.

 9     And the breach of -- the conduct, there is underlying

10     conduct which I understand is part of the breach of

                          Page 3

061405e

11    contract.  But we're not alleging any deception or failure
12    to disclose anything in connection with the purchase of a
13    security.  The conduct is -- there is underlying conduct,
14    market timing.  It's clearly in the complaint, your Honor.
15    But what I --
16             THE COURT:  I appreciate that.  But I'm just trying
17    to get the essence of it here.  They're arguing, among other
18    things, complete preemption.  What does this implied
19    contract arise out of?
20             MR. PASTOR:  It arises out of the agreement to
21    provide investment advisory services and manage the funds.
22    And implied in any arrangement like any contract is, and
23    this is under state law, your Honor, the contract, the
24    implied covenant of good faith and fair dealing.  And what
25    we've alleged, your Honor, is that has been breached by the

▯

5

1    combination of the conduct that we talked about in the
2    complaint and the failure to, because of that breach,
3    rather, we allege that the investors, the purchasers, the
4    holders as of that particular time ought to be allowed to
5    get out of it without having to pay that Contingent Deferred
6    Sales Charge.  Because the contract has been breached.  And
7    the breach again is the conduct that we've alleged in the
8    complaint, it's the market timing.
9             THE COURT:  A violation of federal law.
10            MR. PASTOR:  It's a violation of federal law.  But
11    really the --
12            THE COURT:  I'm jumping a little fast here.  I'm
13    not clear it's a violation of federal law.
14            MR. PASTOR:  Right.

Page 4

061405e

15          THE COURT:  It's arguably a violation of federal

16     law.

17          MR. PASTOR:  Well, again, it's, you know, it's

18     violation of their duty to manage the funds with the utmost

19     integrity, or you can, you can phrase it that way, phrase it

20     violation of the duty of good faith and fair dealing.  And

21     that conduct violated that duty.  But we're not saying that,

22     we're not alleging a violation of federal law.  We're not

23     alleging that there's, when the people bought -- we're not

24     alleging that they were induced is a better way to say it,

25     your Honor, we're not alleging that they were induced to buy

6

1     these securities based on misrepresentations or omissions.

2     That's the typical case.  And, you know, the cases I think

3     say that that SLUSA is co-extensive with --

4          THE COURT:  When did SLUSA become effective?

5          MR. PASTOR:  I'm sorry?

6          THE COURT:  When was SLUSA passed?  Well, did it,

7     and my question is, and anyone can answer, did it predate my

8     decision in Meyer or postdate it?

9          MR. PASTOR:  I think it predated it.

10          THE COURT:  It predated it.

11          MR. PASTOR:  I believe so, your Honor, yes.

12     Because I think that -- yes, it was '98 or '99.  But as far

13     as I know it did predate your decision in Meyer.  I think in

14     Meyer you dealt with SLUSA but you also dealt with -- well,

15     it wasn't complete preemption.  I think in Meyer it was

16     actually a substantial federal question.  But I think the

17     same, the same theories come to mind that they raise here.

18     They say complete preemption.  In Meyer it was a substantial

Page 5

061405e

19    federal question. But it's really the same argument which

20    you rejected in Meyer, which was that the duties that we,

21    that I've just said that we have alleged that they've

22    breached are duties, they say the duties arise under federal

23    law, the duties arise under federal law. And I think what

24    you said in Meyer, your Honor, was that that doesn't matter.

25    You've alleged the duty under state law. And even though

☐

7

1    there might be some duty that arises under federal law that

2    is the same or similar, that that doesn't, that doesn't make

3    the case, that doesn't make it a substantial federal

4    question, and in this case I would argue it doesn't make the

5    claim completely preempted under federal law, which would

6    be, the only statute that would do that would be SLUSA,

7    because that's the one that they claim that has that effect.

8        THE COURT: And the, the relief that you seek here

9    is the right to withdraw the funds without paying this CDSC

10    charge?

11        MR. PASTOR: That's correct, your Honor.

12        THE COURT: And that's it? That's the only relief?

13        MR. PASTOR: That's the relief sought, your Honor.

14        THE COURT: Because there are arguably related,

15    there are other classes, there are other lawsuits against

16    Columbia. But I'm talking about yours.

17        MR. PASTOR: Sure.

18        THE COURT: And is that how you distinguish yours

19    from these other classes?

20        MR. PASTOR: Well, it's that and the fact that

21    we've alleged a claim on behalf of the holder as a

22    particular -- we're not talking about purchasers or sellers.

Page 6

061405e

23    And I think this, I think this is in a sense a better case

24    in some ways for remand than Meyer because Meyer alleged

25    breach of fiduciary duty based on -- the market timing

8

1    wasn't itself the wrong.  I mean, you know, it's obviously

2    related here.  But I think it's more distant because we're

3    saying just let them out.  You know, let them out because

4    that's what they did.

5          And, you know, they spend a lot of time, your

6    Honor, talking about what's happening in the MDL, that the

7    cases have been assigned to Judge Motz, that there has been

8    a panel of MDL.  It's all irrelevant, your Honor.  It

9    doesn't matter.

10         THE COURT:  Well, from your, from your point of

11   view.

12         MR. PASTOR:  Well, I say it's irrelevant because

13   the matter before this Court is whether this case is

14   remanded, whether this case is properly here in this Court,

15   whether this Court has jurisdiction over this case, not

16   whether --

17         THE COURT:  You can, you can argue that before the

18   MDL, can't you?

19         MR. PASTOR:  Well, sure we can, your Honor.  But

20   that brings up, I'm glad you actually mentioned that, your

21   Honor, because that brings up another motion that's sort of

22   before the Court and that's their motion to stay.  And if I

23   may shift gears for a minute.  Because that, I think that's

24   sort of an easier one.  I think the law is pretty clear that

25   a Court when confronted with a jurisdictional motion, such

1    as we have here, and other actions that the parties want the

2    Court to take, the Court has an obligation to first

3    determine its own jurisdiction.  And the cases, the Supreme

4    Court has said that and the First Circuit has said that and

5    a lot of other cases have said that.  And so the Court --

6    and there's a number of decisions, we have cited it in our

7    opposition to the motion to stay that the Court can't even

8    stay a case until it, when there's a motion for remand, it

9    should decide the jurisdictional issue first.  That's

10    what -- they want you to do the opposite.  They want you to

11    stay the case, let it go to the MDL and ignore --

12          THE COURT:  Theoretically you're no worse off, are

13    you?  Theoretically.

14          MR. PASTOR:  Well --

15          THE COURT:  Judge Motz is one of the nation's most

16    distinguished judges, as is Judge Davis.  And I don't mean

17    to disparage the third judge, I just know those two.

18          MR. PASTOR:  I have no problem with that, you know,

19    I've been before those, those judges.  But I think, your

20    Honor, that -- I mean, I can think of a case where, another

21    large MDL which was actually assigned to Judge Motz, where

22    we had a case that was before, I believe it was Judge Tauro,

23    he remanded it, and other cases around the country were

24    remanded.  Judge Motz was later confronted with an omnibus

25    motion to remand and he denied it.  So, I mean, you can

1    get -- obviously you can get different results.

2          THE COURT:  That's their argument.

3          MR. PASTOR:  Well -- right.  But I think that --

061405e

4          THE COURT: And they say, well, that's undesirable

5     in a, in a federal regime with a strong federal interest

6     here.

7          MR. PASTOR: It happens all the time. It happened

8     in that case, and I think six or seven cases got remanded.

9     I don't remember how many were left. I couldn't tell you

10    the answer to that, in the omnibus motion.

11         THE COURT: Well, tease out that. What happened to

12    the cases that were remanded?

13         MR. PASTOR: Well, in that, in the case, in the

14    example I gave you?

15         THE COURT: Yes, just as an example.

16         MR. PASTOR: Some of them are still pending. Many

17    of them -- a couple of them went to trial. I think most of

18    them got settled. Some settled during trial or right on the

19    eve of trial, some settled at various stages.

20         THE COURT: What happened to the cases that stayed

21    with the MDL?

22         MR. PASTOR: Well, what happened was that there was

23    ultimately a settlement but --

24         THE COURT: All right, they were settled.

25         MR. PASTOR: There was a first settlement that

0

11

1     Judge Motz rejected.

2          THE COURT: All right, that's ten minutes. I'll

3     hear from one or both of the --

4          MR. PASTUSZENSKI: Your Honor, Brian Pastuszenski.

5     I've been elected to speak on behalf of the defendants.

6          THE COURT: Fine, and I'm delighted to hear you.

7          MR. PASTUSZENSKI: Your Honor, I believe that the

Page 9

061405e

8    complaint here before your Honor is fundamentally different

9    from the complaint that existed in Meyer.  And I think that

10   in addition the legal framework that, your Honor, is

11   revealed in this complaint is also fundamentally different.

12   It has, it has advanced, it has developed.  And there are

13   various factors such as the existence of the MDL which, the

14   MDL panel which was not --

15        THE COURT:  When you say the existence, the fact

16   that in this case the judicial panel on multi-district

17   litigation has constituted an MDL panel?

18        MR. PASTUSZENSKI:  Yes, your Honor.

19        THE COURT:  That hadn't happened --

20        MR. PASTUSZENSKI:  That's correct, your Honor.

21        THE COURT:  -- in terms of timing when I acted in

22   that Meyer case.

23        Go ahead.

24        MR. PASTUSZENSKI:  Yes, your Honor.

25        Let me first focus on what I think the starting

12

1    point has to be which is the complaint in this case.

2    Looking at it on its face this complaint is unlike Meyer

3    because this complaint does allege, fundamentally does

4    allege misrepresentations in two ways.  Number one, the

5    words used by the plaintiff speak of, in Paragraph 19,

6    representations and warranties that were made to those who

7    bought shares in the defendant funds.  Paragraph 2 in

8    referring to this implied term of the agreement, refers to

9    it as an implied term pursuant to which the investments were

10   made, not held, but made that talks about a purchase, that

11   talks about a representation made at the time of purchase.

061405e

12          Perhaps the most graphic, I think, the most graphic

13    constellation of representations and warranties are brought

14    into the complaint by virtue of incorporation by reference.

15    In Paragraph 3 of the complaint, and then again in

16    Paragraphs 22 through 24 of the complaint, your Honor, the

17    plaintiff says the following.  And I'm quoting now from

18    Paragraph 3:  The following facts and circumstances alleged

19    below constitute a breach of the agreement.  And then

20    there's a list in Paragraph 3.  Item B is the specificity of

21    the wrongdoing alleged by the governmental agencies.  Those

22    governmental agencies are the ones referred to in turn in

23    Paragraphs 22 through 24.  It's the SEC in a complaint filed

24    in February on the very day of the holding reference point,

25    February '04, and the New York Attorney General, Eliot

☐                                                                        13

1    Spitzer.

2          We've attached the SEC's complaint and also the New

3    York Attorney General's consent decree.  And when you read

4    those documents what jumps off the page concretely are a

5    series of misrepresentations and a series of allegedly

6    deceptive acts which the government ends up either settling

7    with the parties in that case, it was the distributor,

8    Columbia distributor, and the Columbia advisor, which are

9    not defendants in this case, but they are based on alleged

10    omissions or alleged misstatements in the prospectuses

11    issued by the defendant funds in this case.  That is what

12    the plaintiff and counsel for the plaintiff in this case are

13    pointing your Honor to or pointing us to as the basis for

14    his claim.  And not only, your Honor, are they filled with

15    page after page after page of alleged misstatements or
                              Page 11

061405e

16    omissions, which obviously are ultimately settled, but in

17    addition, your Honor, the government, the SEC, in

18    Paragraph 71 of its complaint, alleges a violation of 10b-5

19    and says that as a result of either an omission to describe

20    the market timing activity that allegedly was occurring or

21    in some cases allegedly misdescribing the practices --

22          THE COURT:  It's sort of a hard argument for you to

23    make, isn't it, Mr. Pastuszenski, because in some forum

24    you're going to have to defend this case, unless you're

25    prepared to settle it right now.


☐                                                          14


1          MR. PASTUSZENSKI:  Well, your Honor, again I want

2    to point out that --

3          THE COURT:  It's not you, it's a related --

4          MR. PASTUSZENSKI:  It's a different entity, your

5    Honor.

6          THE COURT:  Right.

7          MR. PASTUSZENSKI:  It's the advisor and the

8    distributor.  But I think, your Honor, the point here is

9    that you can't have it both ways if you're the plaintiff.

10   If you decide to plead a complaint and in your view decide

11   to make it better or deeper or stronger by incorporating

12   literally a hundred pages and more of misrepresentations

13   which the SEC in its own complaint says were in connection

14   with the purchase or sale of securities, I think if you live

15   by the sword you've got to die by the sword, you can't have

16   it both ways, you can't have your cake and eat it, too.

17          This complaint both in terms of speaking of things

18   represented and warranted in connection with implied

19   statements made pursuant to which the investments were made

061405e

20    and the investments were purchased, your Honor, that is

21    exactly what SLUSA was designed to reach.  This is all about

22    market timing.  This is complaining of the same kinds of

23    alleged conduct that the hundred plus cases that are now in

24    front of Judge Motz are complaining about.

25                 THE COURT:  That's why I asked about the timing,

☐

15

1     timing of SLUSA.  I haven't given careful considerations to

2     SLUSA.  I didn't in Meyer, well or ill, and yet you make

3     much of it here and that's given me pause, I must admit.

4                 What do you think the legislative intent was of

5     SLUSA?

6                 MR. PASTUSZENSKI:  Your Honor, I think there were

7     two primary goals that underlie SLUSA.  Number one, at the

8     time that SLUSA was drafted congress perceived an effort to

9     end run the Private Securities Litigation Reform Act which

10    had been passed three years earlier which was designed to

11    impose a uniform federal standard for securities cases in

12    every federal court in the country.  And what began to

13    happen was that more and more cases were appearing in state

14    court.  State court in California, state court in Virginia,

15    state court in Massachusetts.  To end run all of the uniform

16    federal rules, whether they be pleading rules or substantive

17    proof rules that appear in the reform act, congress passes

18    SLUSA in part to plug that loophole.

19                 But in addition, because securities are traded on

20    national markets, because mutual funds are traded in the

21    national economy, there was a desire to, to really bring

22    about uniform rules.  And, in fact, Judge Motz in his

23    opinion which we cite in our brief speaks of that very

Page 13

061405e

24    purpose.  That when you have securities and you have the
25    national economy and investors who are buying these shares

☐                                                                                16

1    all across the country to have, whether it's a state court
2    judge here and a state court judge there all kind of
3    deciding different ways about what are fundamentally the
4    same rules and the same practices and the same principles,
5    really would result in a crazy quilt of law, and I think
6    that was the second primary motivator behind SLUSA.
7             If I can say one other --
8             THE COURT:  Do you mean it was designed to prevent
9    a federal court judge here and a federal court judge there
10   to decide it?
11            MR. PASTUSZENSKI:  No, your Honor.  It was designed
12   hopefully so that there would be some uniformity among the
13   federal judges.  But I think there is a unique aspect to
14   this case, and that is we don't simply have the kind of, and
15   I don't use this pejoratively, but kind of one-off class
16   action case that your Honor often is asked to rule on.  You
17   have a particular company --
18            THE COURT:  I -- what's one-off?  What does that
19   mean?
20            MR. PASTUSZENSKI:  Rather than a series of
21   companies all across the country, here a mutual fund,
22   accused of much the same conduct, you have a, whether it's a
23   pharmaceutical company or a software company, locally based
24   accused of having made misrepresentations in its own
25   filings.  That's what I meant by one-off.

☐

                                                                            17

061405e

1          Here you have an industry, an entire industry

2     accused of participating in much the same conduct, whether

3     it's the advisor entity or the distributor entity or what

4     have you.  We have an entire industry here that is accused

5     fundamentally of violating federal securities law.  And

6     that's, and that's what makes this different.  We have the

7     MDL overlay which I, I submit, your Honor, again relying on

8     many of the things Judge Motz said, argues for a unified

9     rule both as to remand issues as well as on substantive

10    issues.

11          THE COURT:  Well, what does a uniform rule mean?

12    Does it mean a single framework of decision or does it mean

13    a single judge?

14          MR. PASTUSZENSKI:  It means, it means primarily a,

15    hopefully a single uniform rule of decision.  Where you have

16    the kinds of issues here, though, your Honor, it was, it was

17    obviously sensible for the MDL panel to constitute a

18    mechanism to try to deal with all of these cases in one

19    place with unified rules that will then cut across all these

20    cases.

21          One thing I should point out, your Honor, that's

22    not at all clear from the complaint, and that is that market

23    timing during the period that this complaint concerned and

24    the period that all these other complaints concerned, by

25    itself is not illegal.  It's a matter of how it's described,

☐

18

1     whether there were misstatements in the --

2          THE COURT:  And that's why I caught myself.

3          MR. PASTUSZENSKI:  Yes.

Page 15

061405e

4          THE COURT:  I'm not jumping to the conclusion

5    market timing is illegal.

6          MR. PASTUSZENSKI:  Yes, your Honor.

7          THE COURT:  Whatever the press may say that's to be

8    adjudicated.

9          MR. PASTUSZENSKI:  Yes.  May I say one other thing,

10   your Honor?

11         THE COURT:  Yes, briefly.

12         MR. PASTUSZENSKI:  Very briefly.  And that is that

13   I alluded earlier to the way the law has developed since

14   Meyer.  One important respect in which, in which there are

15   cases now that have considered, that have come out with an

16   analysis that, frankly, I think wasn't around at the time of

17   Meyer, is the in connection with the purchase or sale of a

18   security language.  That language looks identical --

19         THE COURT:  You've argued it.  Your ten minutes are

20   up.

21         MR. PASTUSZENSKI:  Thank you, your Honor.

22         THE COURT:  All right.

23         MR. O'CONNOR:  Your Honor, may I have 30 seconds

24   to --

25         THE COURT:  No.

19

1          MR. O'CONNOR:  All right.

2          THE COURT:  He was the designated person.  I gave

3    him ten minutes and that's it.

4          MR. PASTOR:  May I have --

5          THE COURT:  No.  I said it was ten minutes a side.

6    I mean, there's no reason to speak unless your speaking

7    carries with it some genuine import that we're going to

Page 16

061405e

8    follow.

9         Here's what we're going to do.  The motion to stay

10   is denied.  For the moment I have the responsibility to

11   determine whether this Court has jurisdiction.

12        Now, I approach this case with some general

13   considerations all of which warrant careful case specific

14   judicial reflection.  But because it is important for a

15   judge to be transparent, I'm going to put my general

16   concerns on the record.

17        My general concerns are, as follows.  While I will

18   carefully, and I said that I have not sorted my way through

19   SLUSA, and I have not, I will, and I will do it with the

20   utmost fidelity that I can muster to the congressional

21   intent.

22        I also will say, without equivocation, that the

23   practice before the multi-district litigation panel is

24   perceived, I do not make this charge, but it is perceived by

25   both the plaintiffs and the defendants bar, and I appear on

☐                                                    20

1    enough continuing legal education programs to base this on

2    the skilled and wise reflection of distinguished attorneys

3    by both plaintiffs and defendants, to be a defendants

4    maneuver to get before the panel on multi-district

5    litigation.  You've got a large number of lawsuits.  They

6    all get consolidated, sucked out of the district courts in

7    which they were properly -- I'm not adjudicating this

8    case -- properly assigned and they get aggregated.  And the

9    commentators, not plaintiffs or defense lawyers, the

10   commentators, the restatement on multi, I may have the

11   language wrong, but the restatement on multi-district

Page 17

061405e

12    litigation and the like, or complex litigation, Arthur

13    Miller was the commentator, the writings of judges, Judge

14    Ludwig out of the Eastern District of Pennsylvania writing

15    in Judicature, say that when cases, massive cases and the

16    massive number of litigants are aggregated the due process

17    rights and the right to trial by jury of individual

18    litigants tends to take a back seat.  I find that most

19    unfortunate.  It does not empower me to act outside the law,

20    even though a remand is not appealable, but it is a matter

21    of significant concern to me as a judge.

22         I also note, ironically, that the Class Action

23    Fairness Act, a piece of litigation, a piece of legislation,

24    though it's going to breed litigation, which the public

25    through the media received as an extraordinarily

21

1     pro-business bonanza, actually has a number of interesting

2     aspects to it.  And I recognize that I'm not under that act

3     with respect to this litigation.  And one is that a class

4     action, even a class action properly removed from state

5     court, can't go to the multi-district panel.  It's got to

6     stay in the district where it's removed.  And, I have in

7     mind the action that I took in Meyer.

8          So, I came on the bench -- strike that.  I looked

9     at the plaintiff's pleadings thinking, since the whole

10    question of preemption, which is a knotty and a difficult

11    question, could properly be handled by a, no doubt,

12    distinguished justice of the Massachusetts Superior Court.

13    They have the jurisdiction to handle preemption questions

14    both complete or partial or not at all.

15         An aside that I left out, I am working on an

Page 18

061405e

16    opinion where in another preemption context the ERISA

17    preemption context, Chief Judge Edith Jones of the Sixth

18    Circuit wrote in a dissent that district judges are all too

19    often granting preemption willy-nilly in effect.  Those

20    weren't her language, that wasn't her language, it was more

21    measured.  But she was complaining that district judges

22    allow preemption far too often.

23         Now, once I read the defense briefs I slowed down

24    and thought that the appropriate judicial action is the one

25    I now announce.

22

1         I see no reason to stay my hand.  I will begin the

2    analysis that I am required to exercise as a United States

3    District Judge, carefully and with reference to the

4    governing statutes in this, both the state law and the

5    governing securities law statutes, the Private Securities

6    Law Reform Act, and this SLUSA.  I am not clear as to what

7    the acronym means, but I'll check it all out.

8         In the meantime, of course, as I understand

9    practice under the Multi-District Litigation Act, the judges

10   properly constituted as the designees of the multi-district

11   litigation court, the panel, Chief Judge Motz, Judge

12   Davis -- who's the third judge?  Are there four of them?

13   Yes, all of them.  I know Judge Motz and Judge Davis

14   personally, and the truth is there are no better judges in

15   the United States and I have every confidence the other two

16   designated are equal in stature and, and care.  And my

17   conduct here surely cannot be construed as questioning in

18   anything they've done.  I see thorough opinions appended to

19   these briefs which I will read with care.

Page 19

061405e

20      But, I've stayed the -- I've denied the motion to

21   stay.  I take the matter under advisement.  If the

22   multi-district litigation panel orders it transferred

23   they'll do so over my opposition which I now state on the

24   record.  I don't agree that this case be transferred.  But

25   we may not care whether I agree or not, because they have

23

1    the right.  And I don't question that and I will say that,

2    yet again, they are outstanding jurists.  So if they

3    transfer it that's it as far as I'm concerned.  In the

4    meantime, I may decide it.  But I don't promise that I will

5    decide it immediately, and I'm not going to shoot from the

6    hip.  I'm going to think about these things with great care.

7        However, I'm going to tease out the various

8    alternatives right now so there's a record and it all can be

9    argued before the multi-district litigation panel.  If I

10   think it should be remanded it will be remanded, what, to

11   the, where was it, Suffolk?

12       MR. PASTOR:  Yes.

13       THE COURT:  It will be remanded to the

14   Massachusetts Superior Court sitting in and for the County

15   of Suffolk, if I remand it.  If I don't remand it it's going

16   on the running trial list, when?  It's June.  I wouldn't

17   give you later than July 2006.  Maybe you want to do it

18   faster than that.

19       When do the plaintiffs want to go to trial?

20       MR. PASTOR:  That's -- July 2006?

21       THE COURT:  Is satisfactory?

22       MR. PASTUSZENSKI:  Yes.

23       THE COURT:  That's the latest you can have.  It's

Page 20

061405e

24    on the running trial list putatively, or depending the

25    decision here, for July 2006.

24

1            Are there any questions about, and this is not for

2    argument, are there any questions of what I've done?  In

3    sum, I've denied the motion to stay.  I take the motion to

4    remand under advisement.  I've set out a means of

5    proceeding.  You need not file a joint proposed case

6    management schedule until I've decided the motion to remand

7    because it's a waste of time on everyone's part.  Either the

8    MDL panel is going to snap it up and that's an end of me, or

9    they're not, or I'm going to remand it, or I'm not.  It's

10   only if it's here and not remanded that you have to jump

11   through that hoop.

12           So I just ask, questions, and we'll start with the

13   plaintiffs.  Questions?

14           MR. PASTOR:  Well, I was just going to advise the

15   Court of the status of the, if the Court wants to know, of

16   the MDL.

17           THE COURT:  Not really.

18           MR. PASTOR:  Okay.

19           THE COURT:  They do their work.  They'll inform me.

20   Now that I've kept it here for me to work, I know you have

21   every incentive to inform me on both sides.  I know you

22   will.  If they save me time, or work, fine.  But I didn't

23   say I was going to wait on them.

24           Defense, any questions?

25           MR. PASTUSZENSKI:  I have none, your Honor.

25

061405e

1      THE COURT: Mr. O'Connor?

2      MR. O'CONNOR: Your Honor, I don't know that we

3  would want to, but given the compressed time in our filing

4  on this, could we file a supplemental on remand given we

5  were looking at --

6      THE COURT: I, I -- in terms of everything I've

7  said, I welcome additional help. I'm trying not to get you

8  to cut down trees.

9      MR. O'CONNOR: I understand.

10     THE COURT: I've taken the most careful and I think

11 the most just position, said everything I could say, and I

12 welcome the help. But papering the record here --

13     MR. O'CONNOR: Right.

14     THE COURT:  -- if they snap it up is somewhat of a

15 waste. On the other hand, I'm not kidding, I'm going to

16 work on this. And then when I come to a decision I'm

17 confident of rather than coming out here and saying the

18 generalities that I've said --

19     MR. O'CONNOR: Right.

20     THE COURT:  -- I will enter it, if I still have

21 jurisdiction.

22     Yes?

23     MR. PASTOR: Well, along those same lines, your

24 Honor, I understand a lot of paper is certainly not welcome,

25 but would, and I know this is normally done by motion, but

26

1  since we're here now, are we permitted to submit, would we

2  be permitted, rather, to submit a reply in support of the

3  motion for remand?

4      THE COURT: Yes. On remand now. The stay is

Page 22

061405e

5    denied.

6         MR. PASTOR:  Oh, yes, I understand.

7         THE COURT:  You won that.

8         MR. PASTOR:  Yes.

9         THE COURT:  No, I'm happy to have the help.  But

10   something a good judicial system should do, which the MDL

11   panel seeks to do, is cut the litigants costs.  Like

12   everything, these cases are complex and procedures become

13   complex and the tactical maneuvers of litigants become

14   evermore complex.  So, yes, you may but no one is required

15   to.

16        MR. PASTOR:  Thank you.

17        THE COURT:  I'm going to look at this with care

18   myself sensitive to the fact that another Court may snap it

19   up.  And by using that phrase I'm not disturbed by that

20   except I object to their doing it formally.  And sensitive

21   to our federal system, sensitive to the imperatives of

22   preemption that we really should have a single standard for

23   federal causes of action and we should preserve to the

24   states their traditional and appropriate causes of action.

25   I express no opinion on any of that.  We'll see.

                                                        27

1         All right.  Thank you all.  I really am interested

2    to see you.

3         MR. PASTUSZENSKI:  Thank you, your Honor.

4         MR. PASTOR:  Thank you, your Honor.

5         THE COURT:  We'll recess.

6         THE CLERK:  All rise.  Court is in recess.

7         (Whereupon the matter concluded.)

8                         Page 23

061405e

CERTIFICATE

9

10

11

12       I, Donald E. Womack, Official Court Reporter for

13  the United States District Court for the District of

14  Massachusetts, do hereby certify that the foregoing pages

15  are a true and accurate transcription of my shorthand notes

16  taken in the aforementioned matter to the best of my skill

17  and ability.

18

19

20

21

22            _____

                DONALD E. WOMACK

23            Official Court Reporter

              P.O. Box 51062

24       Boston, Massachusetts 02205-1062

            womack@megatran.com

25

EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFF AUERBACH, and<br>ANN DITONDO, on behalf of<br>themselves and all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS<br>CORPORATION,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 01-11723-RCL

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR REMAND

LINDSAY, District Judge.

This is an action filed by Jeff Auerbach and Ann Ditondo (the "Plaintiffs") on behalf of

Massachusetts residents who purchased Chevrolet Malibu vehicles for model years 1997 through

2001 (the "Class"). The plaintiffs originally filed this action against General Motors Corporation

("GM" or the "Defendant") in Middlesex Superior Court. GM subsequently removed the action

to this court pursuant to 28 U.S.C. §§1441 and 1446, asserting diversity jurisdiction under 28

U.S.C. §1332. The plaintiffs have moved for a remand of the action and contend that this court

lacks jurisdiction because the dispute does not satisfy the $75,000 jurisdictional amount under 28

U.S.C. §1332. The motion to remand is GRANTED.

**Discussion**

It is well settled that a federal court must determine any threshold issue of subject-matter

jurisdiction before conducting any further proceedings in an action pending before the court. *See,*

*e.g., Steel Company Citizens for a Better Environment*, 523 U.S. 83, 94 (1998); *Danca v. Private*

*Health Care Systems, Inc.*, 15 F.3d 1, 4 (1st Cir. 1999). Federal courts have original jurisdiction

over civil actions in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. §1332(a). The parties in this matter do not dispute diversity of citizenship.[1] Consequently, the only question before the court is whether the amount in controversy exceeds $75,000 as required for diversity jurisdiction.[2]

The party seeking to litigate in federal court bears the burden of establishing federal subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). Generally, the plaintiff's allegation of the damages is controlling if the claim is appears to be in good faith. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Where a damages allegation is challenged, however, the court must examine whether, "from the face of the pleadings," it is apparent to a legal certainty that the plaintiff could not recover, or was never entitled to recover, the amount claimed. *See id.* at 289; *Dep't of Recreation and Sports v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991). The court must look to the circumstances at the time the complaint was filed in order to determine whether a party has met the amount-in-controversy requirement. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001); *Coventry Sewage Ass'n v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995). Specifically, the First Circuit has held that courts should examine the plaintiffs' claims "from the face of the complaint at the time the petition for removal was filed." *See Ching*

---

[1] The parties stipulate that the plaintiffs are citizens of Massachusetts and that GM is a corporation organized and existing under the laws of Delaware, maintaining a principal place of business in Michigan. *See* Defendant's Notice of Removal ¶2.

[2] Although the plaintiffs filed this action as a class action, the class has not been certified yet. The First Circuit, however, has held that, "[d]uring the period between the commencement of a suit as a class action and the court's determination that it may be so maintained, the suit should be treated as a class action." *See Doucette v. Ives*, 947 F.2d 21, 30 (1st Cir. 1991). Thus, for the purposes for analyzing the amount in controversy, I will treat the Class identified by the plaintiffs as if it has been certified.

2

*v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir. 1990). Thus, jurisdiction must be rooted in the pleadings as they existed at the time of removal, and "subsequent changes ... in the amount in controversy neither confer nor devest [sic] it." *See Thresleff v. Harvard Trust Co.*, 154 F.2d 732, 732 n.1 (1st Cir. 1946). In this instance, the defendant GM bears the burden of demonstrating that removal to this court was proper. *See Dep't of Recreation and Sports*, 942 F.2d at 88.

At the time of removal, the original complaint (the "Complaint") contained a single count alleging fraudulent concealment. *See* Complaint at 8. Twelve days *after* the defendant removed, however, the plaintiffs amended the Complaint to include a second count alleging unfair and deceptive trade practices under Mass.Gen.L. ch.93A, directed to GM's manufacturing, designing and testing practices for Malibus.[3] *See* First Amended Complaint (the "Amended Complaint") at 11. Although the parties have proceeded on the basis of the Amended Complaint, I am required to assess the question of the jurisdictional amount based on the claims at the time of removal, or in other words, as they are pleaded in the Complaint.

The parties' pleadings acknowledge that damages in class actions may not be aggregated for the purpose of calculating the jurisdictional amount. *See Snyder v. Harris*, 394 U.S. 332, 339-40 (holding that aggregation is only permitted where parties seek to enforce a single right or title in which they have a common and undivided interest); *Zahn v. International Paper Co.*, 414 U.S. 291, 301 (1973) (ruling that courts may not exercise supplemental jurisdiction over the claims of class action plaintiffs who do not individually meet the jurisdictional minimum). Each individual plaintiff must therefore satisfy the jurisdictional amount for a federal court properly to have jurisdiction over a diversity action.

---

[3]The defendant removed on October 5, 2001. The plaintiffs filed the Amended Complaint on October 17, 2001.

In the Complaint, the plaintiffs and the Class requested relief that included enjoining GM from "pursuing the policies, acts and practices described in [the] Complaint" and "enjoining GM from engaging in deceptive advertising regarding the Malibu." *See* Complaint at 10. The only policy, act or practice alleged to have been wrongful in the Complaint was the fraudulent concealment of defective brakes in Malibu vehicles. The injunctive relief sought, therefore, was confined to a request in substance that GM be prohibited from concealing the deceptive brakes in Malibus. The plaintiffs also requested the disgorgement or imposition of a constructive trust upon GM's excess profits from the sale of defective Malibus, damages related to any unlawful act or practice committed by the defendant, and litigation-related damages for the plaintiffs and the Class. *See id.* The named plaintiffs, Auerbach and DiTondi, claimed, however, damages only for the repair and replacement of the Malibu brakes in their vehicles - - damages totaling $800 and $300, respectively. *See* Am. Comp. ¶¶ 9-10. While the defendant has submitted an affidavit asserting that the injunctive relief commensurate with count II of the Amended Complaint exceeds $75,000, the defendant has not asserted that the plaintiffs' claim that damages for count I do not meet the jurisdictional amount requirement.

I note in passing that district courts in New York and Texas have remanded related cases against GM on the grounds that the plaintiffs' claims similarly did not satisfy the requisite jurisdictional amounts. *See Post v. General Motors Corp.*, No. 01 civ. 9410, 2002 WL1203847; *Garza v. General Motors Corp.*, No. DC-01-231 (Dist. Ct. Duval County, Tex.). The complaints in both cases were substantially similar to the Complaint in the matter at hand, alleging deceptive trade practices and fraudulent concealment by GM. The court does not decide (because there is no need to decide) whether the claims of each individual plaintiff, as pleaded in

4

the Amended Complaint, would satisfy the jurisdictional amount.  It is enough to say that the

complaint, as it existed at the time of removal, did not assert damages meeting the jurisdictional

requirement.  For that reason, the matter to remove this case to the Middlesex Superior Court is

GRANTED.

So ordered.

/s/ REGINALD C. LINDSAY
United States District Judge

DATED:

5